**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| TODD COLE, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )      **CIV. ACT. NO. 1:22-cv-99-TFM-N** |
| | ) |
| **3 CIRCLE CHURCH, INC.,** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Pending before the Court are Defendants' respective Motions for Summary Judgment and briefs in support (Docs. 37, 38, filed 4/7/23, Doc. 53, filed 5/1/23, Doc. 61, filed 5/15/23). Also pending are the related motions: the *Joint Motion of Defendants to Strike Untimely Affidavit of Todd Cole* (Doc. 77, filed 7/11/23), Defendant Blake Stanley's *Motion for Rule 56(H) Hearing, Reasonable Fees and Expenses* (Doc. 81, filed 7/13/23). Having considered the motions, responses, replies, and relevant law, the Court finds as follows: (1) the Motion to Strike (Doc. 77) is **CONSTRUED** as objections and **OVERRULED**; (2) the Motion for Rule 56(H) hearing (Doc. 81) is **DENIED**; (3) Defendant 3 Circle Church's Motion for Summary Judgment (Docs. 53, 61) is **GRANTED**; and (4) supplemental jurisdiction is declined and Defendant Blake Stanley's Motion for Summary Judgment (Docs. 37, 38) is **REMANDED** to state court for resolution.

## I.    JURISDICTION AND VENUE

No party contests jurisdiction or venue, and the Court finds adequate support for both. The district court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343(a)(3) (civil rights), and 28 U.S.C. § 1367 (supplemental jurisdiction).

The district court has personal jurisdiction over the claims in this action because the events that gave rise to this action arose within this district and 3 Circle Church is located in this district. *See Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291-92 (11th Cir. 2000) ("Specific jurisdiction arises out of a party's activities in the forum that are related to the cause of action alleged in the complaint. . . . General personal jurisdiction, on the other hand, arises from a defendant's contacts with the forum that are unrelated to the cause of action being litigated. The due process requirements for general personal jurisdiction are more stringent than for specific personal jurisdiction, and require a showing of continuous and systematic general business contacts between the defendant and the forum state.").

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events that gave rise to Plaintiff's claims occurred in this judicial district.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Factual Background

Defendant 3Circle Church ("3Circle") is a Christian Church with four Alabama campuses located in Fairhope, Daphne, Mobile, and Thomasville. Doc. 61 at 2. Plaintiff Todd Cole ("Plaintiff" or "Cole") began attending 3Circle in 2011, and sometime between 2011 and 2013 he began volunteering at 3Circle.[1] Defendant Blake Stanley ("Stanley") was hired as an Executive Pastor, Operations/Finance by 3Circle on August 16, 2016. Doc. 58-1 at 1.

At all relevant times, 3Circle had written "Equal Employment Opportunity and No Harassment" polices, which provided that 3Circle "do[es] not tolerate harassment of . . . employees" and listed the steps to take to report a violation of the no harassment policy. Doc. 61 at 3. The

---

[1] Plaintiff asserts that he began volunteering with 3Circle in 2011, while 3Circle maintains that he began volunteering "in 2012 or 2013." *See* Doc. 67 at 3; Doc. 61 at 5. For purposes of the motions at issue, whether Cole started volunteering in 2011, 2012, or 2013 is immaterial.

policy provides that violations must be reported to "one or more members of the Executive Team." *Id.* At all relevant times, the "Executive Team" consisted of the four executive pastors: Chris Bell, Russell Creel, Zach Adamson, and Blake Stanley. *Id.* at 2. Plaintiff signed an acknowledgment that he received the Equal Employment Opportunity Policy and No Harassment policy. Doc. 58-2 at 6.

When Cole first began volunteering at 3Circle, he worked under Bill Fountain, helping with maintenance. Doc. 58-1 at 5. After approximately two years of volunteer work, Cole took a paid position at 3Circle. *Id.* After Bill Fountain retired, in late 2014 or early 2015, Cole became 3Circle's facilities director. *Id.*; Doc. 67 at 4. According to Plaintiff, he began reporting to Blake Stanley in 2018. Doc. 67 at 4. Plaintiff remained employed at 3Circle until September 19, 2019, when he was terminated. Doc. 61 at 9.

It is undisputed that Plaintiff never reported the alleged sexual harassment to the Executive Team pursuant to the no harassment policy. Doc. 53-1 at 8, 20-21, 44-45. Rather, Plaintiff, purporting to be a group of 3Circle members, wrote two anonymous letters to the 3Circle Elders. Plaintiff argues the anonymous letters provided sufficient information for 3Circle to investigate Stanley. The first of these anonymous letters was sent to the 3Circle Elders in September or October 2018. Doc. 67 at 6. The letter stated:

> The biggest concern is how [Stanley] conducts himself personally. He uses language that you would not expect to come from a pastor. He makes crude remarks that he thinks are humorous. He does things that are inappropriate. Things, this day and age [that] can [get] you and your employer sued. He needs to keep his hands to himself. Our church is not used to this behavior from [a] man who professes to be a pastor. We sure don't need any type of potential scandal associated with the church.

*Id.* at 6-7; Doc. 53-1 at 162.

Approximately one year later, Plaintiff wrote the second anonymous letter, again

purporting to be from a group of 3Circle members.  As it pertained to Stanley, the letter provided:

> Why is Mr. Stanley repeatedly rude and disrespectful to members, especially senior citizens and volunteers?  It is obvious he has anger issues but why is this allowed. Members have actually left the church because of this behavior.

Doc. 67 at 7; Doc. 53-1 at 165.  The parties dispute when 3Circle received the second letter. Plaintiff claims that he left the letter in the church mailbox on or about September 5, 2019, and that he saw the envelope in a stack of mail at an office at the church the next day.  Doc. 67 at 7; Doc. 68-3 at 3.  3Circle asserts that Johnathan Hogan, a staff member of 3Circle, forwarded the letter to the Executive Team on September 17, 2019 after "someone unaffiliated with 3Circle had found a letter in her driveway addressed to '3Circle Church Members.'"  Doc. 61 at 15; Doc. 53-5 at 38.

On September 19, 2019, Plaintiff was called to a meeting between himself, Stanley, and Executive Pastor Russell Creel.  During that meeting, Plaintiff's employment was terminated. Plaintiff states that Stanley led the meeting, and that during the meeting he was told "[w]e know you've been unhappy with some things around here and some people.  We're moving in a different direction."  Doc. 68-3 at 3.  Stanley also told Plaintiff that someone saw him sleeping on the job. *Id.* at 4.

After he was terminated, on or around February 12, 2020, Plaintiff filed an EEOC complaint alleging that he was fired for his "sexual harassment complaint," that he was discriminated against on the basis of sex, and subjected to a sexually hostile work environment. *See* Doc. 68-13.

**B.    Procedural Background**

On January 7, 2022, Plaintiff originally filed his Complaint in the Circuit Court for Baldwin County, Alabama, asserting claims of sexual harassment pursuant to Title VII of the Civil Rights

Act of 1964 and assault and battery. Doc. 1-1. Defendants timely removed the case to this Court on March 3, 2022. Doc. 1. Shortly thereafter, Defendants filed their respective answers. Docs. 5, 7.

On April 7, 2023, Stanley filed his motion for summary judgment. Docs. 37, 38. On May 15, 2023, 3Circle filed its motion for summary judgment.[2] Docs. 53, 61. Plaintiff filed his response to the motion and the 3Circle filed a reply. Docs. 67, 80. On July 11, 2023 Defendants filed their motion to strike the affidavit of Todd Code. Doc. 77. Plaintiff filed his response, along with a motion to accept the affidavit at issue as timely, and Defendants filed a joint reply. Docs. 83, 84. Additionally, on July 13, 2023, Stanley filed his motion for rule 56(h) hearing to which Plaintiff responded. Docs. 81, 85. The motions are fully briefed and ripe for review, and the Court finds oral argument unnecessary.

## II.     STANDARD OF REVIEW

A party in a lawsuit may move a court to enter summary judgment before trial. FED. R. CIV. P. 56(a), (b). Summary judgment is appropriate when the moving party establishes there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *see also Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) ("Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"). "[T]he substantive law will identify which facts are material." *Anderson v.*

---

[2] The Court notes that there were numerous extensions granted to both Plaintiff and Defendants regarding the motions for summary judgment and briefing. Thus, while the motion itself was filed on May 1, 2023, the brief in support, which was necessary for Plaintiff to respond and for the Court's review of the motion, was not filed until May 15, 2023. Thus, the Court uses the later date as it is the date the motion was fully submitted.

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Ritchey v. S. Nuclear Operating Co.,* 423 F. App'x 955 (11th Cir. 2011) (quoting *Anderson*, 477 U.S. at 248).[3]  At the summary judgment juncture, the court does not "weigh the evidence and determine the truth of the matter," but solely "determine[s] whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.  Only disputes about the material facts will preclude the granting of summary judgment. *Id.*

The movant bears the initial burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A party must support its assertion that there is no genuine issue of material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1).  The admissibility of evidence is subject to the same standards and rules that govern admissibility of evidence at trial.  *Clemons v. Dougherty County*, 684 F.2d 1365, 1369 n.5 (11th Cir. 1982) (citing *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 556 (5th Cir. 1980)).

Once the movant meets its burden under Fed. R. Civ. P. 56, the non-movant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  "A genuine issue of material fact exists when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Moore ex rel. Moore v. Reese*, 637 F.3d 1220, 1232 (11th Cir. 2011)

---

[3] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority."  11th Cir. R. 36-2 (effective Dec. 1, 2014); *see also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

(quoting *Anderson*, 477 U.S. at 248).  The court must view the facts and draw all reasonable inferences in favor of the non-moving party.  *Id*. (citing *Rosario v. Am. Corrective Counseling Servs., Inc.*, 506 F.3d 1039, 1043 (11th Cir. 2007)); *Greenberg*, 498 F.3d at 1265 ("We view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion.").  However, to avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586 (citations omitted).  Conclusory assertions, unsupported by specific facts, that are presented in affidavits opposing the motion for summary judgment are likewise insufficient to defeat a proper motion for summary judgment.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).  "Speculation does not create a *genuine* issue of fact."  *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (citation omitted).  If the evidence is merely colorable or is not significantly probative, summary judgment may be granted.  *See Anderson*, 477 U.S. at 249-50 (emphasis in original) (citations omitted).  In short, summary judgment is proper after adequate time for discovery and upon motion against a party who fails to make a showing that is sufficient to establish the existence of an element that is essential to that party's case. *Celotex*, 477 U.S. at 322.

Finally, Fed. R. Civ. P. 56(e) also provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order." FED. R. CIV. P. 56(e).

### III.    DISCUSSION AND ANALYSIS

The Court will first address Defendants' objections to portions of Plaintiff's evidentiary

submissions that were filed in support of his response to the motion for summary judgment, then the Rule 56(h) motion, and finally the motions for summary judgment.

## A.    Motion to Strike

Defendants move the Court to strike evidence submitted by Plaintiff in opposition to Defendants' motions for summary judgment, including the Affidavit of Todd Cole (Doc. 68). As an initial matter, the Court notes that motions to strike are not the appropriate vehicle for a general attack on an opposing party's evidence.  Rule 12(f) of the Federal Rules of Civil Procedure only applies to **pleadings**.  It states "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f); *see also* 2 James Wm. Moore, et al., Moore's Federal Practice § 12.37[2] (3d ed. 2013) ("Only material included in a 'pleading' may be the subject of a motion to strike. . . . Motions, briefs or memoranda, objections, or affidavits may not be attacked by the motion to strike."). As of December 2010, under Rule 56 of the Federal Rules of Civil Procedure motions to strike on summary judgment are not appropriate.  Instead, the advisory committee notes to Rule 56 specify:

> Subdivision (c)(2) provides that a party may object that material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. The objection functions much as an objection at trial, adjusted for the pretrial setting.  The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated.  There is no need to make a separate motion to strike.  If the case goes to trial, failure to challenge admissibility at the summary-judgment stage does not forfeit the right to challenge admissibility at trial.

Fed. R. Civ. P. 56, Adv. Comm. Notes, "Subdivision (c)" (2010 Amendments).  The Court thus construes the Defendants' motion to strike as an objection.

Here, Defendants object to the evidence submitted by Plaintiff in support of his response on the grounds that it was untimely.  Specifically, Defendants note that the affidavit was not signed by Todd Cole or submitted until the day after the response was filed, and that Plaintiff did not

motion for an extension of time to file his record evidence.

"Federal courts have a strong preference for deciding cases on the merits rather than procedural technicalities." *State Farm Mut. Auto. Ins. Co. v. Epright*, Civ. Act. No. 2:15-cv-344-SPC-MRM, 2015 U.S. Dist. LEXIS 158776, at *6-7, 2015 WL 7450108, at *2 (M.D. Fla. Nov. 24, 2015). Additionally, in its discretion, a district court may extend the time for good cause and accept an untimely affidavit upon a showing of excusable neglect. FED. R. CIV. P. 6(b)(1)(B). While the rule requires the untimely party to file a motion demonstrating excusable neglect, the Court may treat the untimely filing itself as a request to extend based upon excusable neglect. *See, e.g., Trustees of New Mexico Pipe Trades Health & Welfare Trust Fund v. Mares Plumbing & Mechanical, Inc.*, Civ. Act. No. 11-1065, 2012 U.S. Dist. LEXIS 193213, at * 21, 2012 WL 13080108, at *7 (D.N.M. Jun. 18, 2012); *see also Lovelace v. Lee*, 472 F.3d 174, 204 (4th Cir. 2006) (holding that district court did not abuse its discretion in considering executed affidavit filed five weeks after unexecuted affidavit was filed, even where Defendant did not offer any explanation for five-week delay). To make this equitable finding, the Court may consider multiple factors, including the danger of prejudice to the opposing party, the length of the delay and its impact on judicial proceedings, and the reason for the delay including whether it was within the reasonable control of the movant and whether the movant acted in good faith. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.*, 507 U.S. 380, 395 (1993) (citation omitted)).

Defendants are correct that Plaintiff's evidence, including the affidavit of Todd Cole, were untimely filed. However, considering the abovementioned factors, the Court finds excusable neglect and accepts the record evidence, including the affidavit of Todd Cole, as timely.

First, the length of delay was brief. Plaintiff filed the record evidence only one day after filing his response in opposition. Second, Defendants fail to demonstrate any prejudice resulting

from Plaintiff's untimely filing.  The Court granted Defendants an extension of fifteen days from the date that Plaintiff filed his response to file their reply.  Doc. 74.  Thus, any prejudice that Defendants may have experienced as a result of the late filing was negated by the extensive reply deadline.  Third, Plaintiff, while incorrect in his understanding of the rules, believed he could file accompanying exhibits separately and later than his response to the motion without issue.  While the Court reminds Plaintiff's counsel of his obligation to familiarize himself with the federal and local rules, it is evident that Plaintiff acted in good-faith when he filed the record evidence at issue.

Accordingly, Defendants' Motion to Strike (Doc. 77) is **CONSTRUED** as an objection and is **OVERRULED**.  Plaintiff's motion to accept the evidence as timely filed (Doc. 83) is **GRANTED**.

### B.    Motion for Rule 56(h) hearing

Defendant Blake Stanley moves for a Rule 56(h) hearing and reasonable expenses and attorney's fees.  Stanley's motion stems from Plaintiff's statement in his deposition that he decided not to sue Stanley, and then later made a statement in his affidavit that allegedly conflicts with the deposition statement.  See Doc. 81 at 1-2.  Specifically, Stanley argues that "it is a sham for plaintiff to argue in his affidavit that plaintiff did not have an opportunity to examine Exhibit 35 to his deposition." *Id.* at 4.

Rule 56(h) provides:

> If satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay, the court—after notice and a reasonable time to respond—may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result.  An offending party or attorney may also be held in contempt or subjected to other appropriate sanctions.

Fed. R. Civ. P. 56(h).  "[T]he Court 'has wide discretion in deciding what constitutes bad faith.'"

*Nationwide Mut. Fire Ins. Co. v. D.R. Horton, Inc.*, Civ. Act. No. 15-351-CG-N, 2016 U.S. Dist.

LEXIS 160148, at *13, 2016 WL 6828206, at *4 (S.D. Ala. Nov. 18, 2016) (quoting 10B Charles

A Wright, Arthur R. Miller, & Mary K. Kane, *Federal Practice and Procedure* § 2742 (3d ed.

1998)).  "Many courts consider affidavits containing perjury, unabashed falsehood, or statements

directly in conflict with prior testimony to be evidence of a bad faith submission." *Id.*,  2016 U.S.

Dist. LEXIS 160148, at *13-14, 2016 WL 6828206, at *4 (citations omitted).  "If a court finds 'the

misinformation has been included negligently rather than intentionally,' it will not apply sanctions."

*Id.*, 2016 U.S. Dist. LEXIS 160148 at *14, 2016 WL 6828206, at *4 (citation omitted).

In reviewing Stanley's motion, it is helpful to have the full context under which Plaintiff

made the statement at issue.  The relevant portion of the deposition transcript provides:

> Q. Let me hand you what I've marked as Plaintiff's Exhibit 35 and ask you what is
> that?  It's a copy of your complaint.  Defendants' 35.  Have you ever seen that
> before?
> A. This is the original EEOC complaint?
> Q. I'm not here to answer questions.  Have you ever seen Number 35 before?
> A. Yes
> Q. All right. What is it?
> A. It's my original complaint.
> Q. All right.  And do you know what you have sued Blake Stanley for in this lawsuit
> which you are now holding in your hand?
> A. Sexual harassment and retaliation.
> Q. Okay.  Have you sued him for assault and battery, Blake Stanley?
> A. No.  We didn't include that.
> Q. Okay.  So he has never assaulted you and he's never battered you in any way; is
> that correct?
> A. I wouldn't say that.
> Q. You would say he has not done that?
> A. No.  The first time he grabbed me I would consider assault.
> Q. All right.  So are you now saying two minutes later that you do intend to sue him
> for assault and battery?
> A. Absolutely not.
> Q. All right. So you never communicated to anyone any reason to sue Blake Stanley
> for assault and battery; is that true?
> A. True.
> Q. All right. Now, you said that--because to your understanding of what assault and
> battery is, Blake Stanley never did that to you; is that correct?
> A. He never did assault me?
> Q. He did not, did he?

A. I would consider what he did assault.
Q. But you decided not to sue him for it?
A. No.
Q. No what?
A. No, I decided not to sue him for it.

Doc. 37-1 at 9-11.  In his affidavit, Plaintiff clarifies that his above deposition responses were

based on the EEOC complaint, not the complaint which initiated this lawsuit.  Doc. 68-3 at 5-6.

It is not clear from the deposition transcript whether Plaintiff understood he was answering

questions about his federal complaint.  When he attempted to clarify which complaint it was,

Stanley's counsel did not state that it was the federal complaint, but rather that he was "not here to

answer questions."  Plaintiff's misunderstanding about which document he was being shown may

have been negligent, but it certainly does not amount to "perjury, unabashed falsehood, or

statements directly in conflict with prior testimony."  As Plaintiff notes, he is not an attorney and

therefore cannot be expected to have the same grasp as an attorney of all the legal intricacies of an

EEOC complaint compared to a federal complaint.  Additionally, while Plaintiff was represented

by his previous attorney during the deposition, his attorney appeared by zoom and therefore was

not physically present to examine the document with Plaintiff.  Thus, the Court finds that sanctions

under Rule 56(h) are not appropriate here.

Accordingly, Defendant Stanley's motion for Rule 56(h) sanctions is **DENIED**.

**C.    Defendant 3Circle's Motion for Summary Judgment**

Plaintiff asserts claims of sexual harassment and retaliation against Defendant 3Circle.

Doc. 1-1 at 10-12.  3Circle argues Plaintiff has not established a *prima facie* case of sexual

harassment because he has not provided evidence that he was subjected to a sexually hostile work

environment.  Doc. 61 at 17.  Further, 3Circle argues, even if Plaintiff has established a *prima*

*facie* case of sexual harassment, Plaintiff unreasonably failed to take advantage of 3Circle's

complaint procedure.  *Id.* at 22.  3Circle also argues that Plaintiff cannot establish a *prima facie* case for retaliatory discharge because he has failed to produce evidence that there is a causal connection between the October 2018 letter and his September 2019 termination.  *Id.* at 26. Additionally, 3Circle argues that even if Plaintiff has established a *prima facie* case, it has articulated a legitimate, nondiscriminatory reason for his termination and Plaintiff has failed to rebut that reason.  Plaintiff counters that 3Circle's legitimate, nondiscriminatory reasons for the alleged discriminatory act are pretext.  Doc. 67 at 8-9.

### i.     Sexual Harassment Claim

Plaintiff claims that he was subjected to sexual harassment by Stanley when he was employed at 3Circle working under Stanley.  Specifically, Plaintiff claims that during his employment "Stanley would make sexually suggestive comments and would touch Cole without permission, including but not limited to, rubbing and massaging his shoulders, hugging, placing hands on hips, and by attempting to remove his shirt without his permission."  Doc. 1-1 at 8-9.

To establish a *prima facie* case of sexual harassment under Title VII, Plaintiff must demonstrate: "(1) [he] belongs to a protected group; (2) [he] was subject to unwelcome sexual harassment; (3) the harassment complained of was based upon sex; (4) the harassment complained of was 'sufficiently severe or pervasive to alter the terms and conditions of employment'; and (5) there is a basis for holding [the Defendant] liable."  *Wilcox v. Corr. Corp. of Am.*, 892 F.3d 1283, 1286 (11th Cir. 2018) (citing *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 808 (11th Cir. 2010) (en banc)).

Plaintiff's complaint passes muster on the first prong because, as a male, he belongs to a protected class under Title VII.  *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998).

Plaintiff also passes muster on the second prong for summary judgment purposes,[4] as he alleges facts sufficient to show that the conduct by Stanley was unwelcome, as evidenced by the first anonymous letter he wrote to 3Circle regarding Stanley,[5] as well as his EEOC complaint in which Plaintiff stated "[i]f Stanley and I were ever around each other alone then he was touching me in some way despite me repeatedly telling him to stop."  Doc. 68-13 at 1-2.  *See Henson v. City of Dundee*, 682 F.2d 897, 903 (11th Cir. 1982) ("In order to constitute harassment, this conduct must be unwelcome in the sense that the employee did not solicit or incite it, and in the sense that the employee regarded the conduct as undesirable or offensive.").

Plaintiff falls short, however, on the third and fourth prongs.  The third prong requires Plaintiff to plausibly allege that the harassment complained of was based on his sex.  *See Wilcox*, 892 F.3d at 1286.  Specifically, Plaintiff must allege facts that prove "but for [his] sex, [he] would not have been subject to sexual harassment."  *Furcron v. Mail Centers Plus, LLC*, 843 F.3d 1295, 1305 (11th Cir. 2016).  While Plaintiff names several instances in which he viewed Stanley's behavior toward him as sexual harassment, he does not allege **any** facts indicating that Stanley subjected him to the alleged harassment due to his sex.  Without more, Plaintiff simply cannot meet the third prong of a sexual harassment claim.  *See Henson*, 682 F.2d at 904 ("[W]here the

---

[4] The Court notes that there may be questions of fact as to whether the conduct was unwelcome because Defendant included evidence of text messages from Plaintiff in which Plaintiff called Stanley "punkins" and "he-man."  Doc. 58-2 at 12-13; Doc. 53-1 at 171, 182.  Therefore, for purposes of summary judgment only, the Court construes the facts in the light most favorable to the Plaintiff.

[5] While the anonymous letter states that it was written by a group of 3Circle members, Plaintiff states in his deposition that he wrote the letter and was the sole author of the letter.  Additionally, in his deposition Plaintiff describes a total of 12 occasions which he considered unwelcome touching and harassment by Stanley.  However, on none of those occasions did Plaintiff tell Stanley or anyone else about the contact and that it was unwelcome.  *See* Docs. 68-6 through 68-10.

conduct complained of is equally offensive to male and female workers . . . sexual harassment would not be based upon sex . . ..").

As to the fourth prong, Plaintiff must allege facts showing that he suffered sexual harassment that was severe and pervasive enough to alter the terms and conditions of employment. *See Wilcox*, 892 at 1286. "The employee must 'subjectively perceive' the harassment as sufficiently severe and pervasive to alter the terms or conditions of employment, and this subjective perception must be objectively reasonable." *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999).

> [T]he following four factors . . . should be considered in determining whether harassment objectively altered an employee's terms or conditions of employment: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance.

*Id.* (citing *Allen v. Tyson Foods*, 121 F.3d 642, 647 (11th Cir. 1997)). The Eleventh Circuit has rejected sexual-harassment claims based on conduct that is just as serious or more serious than the conduct at issue in this case. *See id.* at 1247 (finding conduct complained of was not sufficiently pervasive to survive summary judgment where alleged harasser told plaintiff "I'm getting fired up," rubbed his hip against the plaintiff's hip while touching her shoulder and smiling, made a sniffing sound while looking at the plaintiff's groin area, and constantly followed and stared at plaintiff in a "very obvious fashion."); *Allen v. Ambu-Stat, LLC*, 799 F. App'x 703, 705, 710 (11th Cir. 2020) (finding conduct complained of not sufficiently severe or pervasive where the alleged harasser made several comments about plaintiff's appearance, including that she was "fine as hell" and that "she had a body like his ex-girlfriend, but better, with wider hips," three other "crude sexual references" including asking her whether her boyfriend "ate that thang," and commenting "[d]amn, that thing get wet like that" when working out at the gym with plaintiff, referring to her

groin area that was wet with sweat).[6]

In the present case, Plaintiff described twelve instances of conduct by Stanley in his deposition that he considered sexual harassment.  Those instances include coming up to him and rubbing his lower back (Doc. 68-7 at 1), pinching him "on that part of the fat just above the hip bone" (Doc. 68-8), grabbing his neck and squeezing his trapezius muscle (Doc. 68-8), punching him in the shoulder while he was arranging chairs (Docs. 68-9, 68-10 at 1), trying to grab his keys out of his pocket (Doc. 68-10 at 2), pushing him from behind in the middle of the back while walking through the entrance of one of the church buildings (Doc. 68-10 at 3), pulling his t-shirt up while he was moving boxes (Doc. 68-10 at 4), placing his hand on his stomach and telling him that he's getting fat and rubbing down towards his beltline (Doc. 68-10 at 5), and slapping him on the knee when he walking by him (Doc. 68-10 at 6).  Plaintiff alleges that Stanley's conduct began

---

[6] Other circuits have also similarly rejected sexual harassment claims where the conduct complained of was just as serious or more serious than the conduct at issue in this case.  *See, e.g., Shepherd v. Comptroller of Public Accounts of Texas*, 168 F.3d 871, 872-75 (5th Cir. 1999) (holding that several incidents over a two-year period, including comment "your elbows are the same color as your nipples," another comment that plaintiff had big thighs, touching plaintiff's arm, and attempts to look down the plaintiff's dress, were insufficient to support hostile-environment claim); *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 768 (2d Cir.1998) (holding that statement that plaintiff had the "sleekest ass" in office plus single incident of "deliberately" touching plaintiff's "breasts with some papers that he was holding in his hand" were insufficient to alter the terms or conditions of the plaintiff's employment); *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1365-66 (10th Cir. 1997) (holding five "sexually-oriented, offensive" statements over sixteen months insufficient to show hostile environment, even though one of the harasser's statements occurred while he put his arm around plaintiff, looked down her dress and said, "well, you got to get it when you can"); *Hopkins v. Baltimore Gas & Elec. Co.*, 77 F.3d 745, 753-54 (4th Cir. 1996) (holding evidence that the harasser "bumped into [the plaintiff], positioned a magnifying glass over [the plaintiff's] crotch, flipped his tie over to see its label, gave him a congratulatory kiss in the receiving line at [a] wedding, and stared at him in the bathroom" insufficient to establish violation of Title VII); *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430 (7th Cir.1995) (holding insufficiently severe or pervasive to support a hostile-environment claim nine instances of offensive behavior over seven months including repeated references to plaintiff as a "tilly" and a "pretty girl" and one instance of simulated masturbation).

on or around December 31, 2017,[7] when Plaintiff began reporting to Stanley as his immediate supervisor, and Plaintiff was fired on September 19, 2019.  Doc. 1-1 at 8-9.  Thus, the alleged conduct took place over the span of approximately 20-22 months.

While the abovementioned conduct may have been annoying and even offensive, it does not amount to "severe or pervasive conduct" which "alters the terms or conditions of employment." First, dividing the number of alleged instances over the course of 22 months, the frequency of the conduct occurred on average only once every other month.  Next, the alleged conduct is far less severe than conduct that many circuits have held insufficient for a sexual harassment claim. Plaintiff states in his response in opposition that "while Cole could not remember every instance in perfect detail, many more than eleven instances occurred."  Doc. 67 at 6.  However, the fact that Plaintiff is unable to describe the other instances indicates that they were not so pervasive or severe as to alter the terms or conditions of his employment.  Finally, Plaintiff does not allege that the conduct unreasonably interfered with his job performance, and absent allegations otherwise, the Court will not assume that it did.

Accordingly, because Plaintiff's allegations fall short of establishing the third and fourth prongs of a *prima facie* case of sexual harassment, Defendant 3Circle's motion for summary judgment is due to be **GRANTED** as to Plaintiff's Title VII sexual harassment claim.

The Court need not analyze the fifth prong, nor any affirmative defenses that might be available to 3Circle, because Plaintiff's *prima facie* case fails.  However, the Court notes that 3Circle did have a anti-harassment policy in place which provided the procedure for an employee

---

[7] In his Complaint, Plaintiff states that he began reporting to Stanley on or around December 31, 2017.  Later, in his response in opposition to the motions for summary judgment, Plaintiff states that he began reporting to Stanley in early 2018.  The exact date is a distinction without a difference, as it only results in a month or two change in the span of time during which the alleged conduct occurred.

to report sexual harassment in the workplace, and Plaintiff failed to take advantage of that policy. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 805 (1998) (noting that an employer may "show as an affirmative defense to liability that the employer had exercised reasonable care to avoid harassment and to eliminate it when it might occur, and that the complaining employee failed to act with like reasonable care to take advantage of the employer's safeguards and otherwise to prevent harm that could have been avoided.").

### ii. Retaliation Claim

To establish a *prima facie* case of retaliation under Title VII, Plaintiff must show: "(1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there is some causal relation between the two events." *Olmstead v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998) (citing *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1994)).

> The causal link element is construed broadly so that "'a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated.'" *Olmsted*, 141 F.3d at 1460 (quoting *E.E.O.C. v. Reichhold Chems., Inc.*, 988 F.2d 1564, 1571-72 (11th Cir.1993)). Once a plaintiff has established a *prima facie* case, the employer then has an opportunity to articulate a legitimate, non-retaliatory reason for the challenged employment action. *Olmsted*, 141 F.3d at 1460; *Meeks*, 15 F.3d at 1021. The ultimate burden of proving by a preponderance of the evidence that the reason provided by the employer is a pretext for prohibited, retaliatory conduct remains on the plaintiff. *Olmsted*, 141 F.3d at 1460.

*Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001). The Court first analyzes Plaintiff whether Plaintiff has established a *prima facie* case, then turns to Defendant's legitimate, non-retaliatory reasons for terminating him, and then to whether Plaintiff has met his burden to prove pretext by a preponderance of the evidence.

### (a) *Prima Facie* Case

Plaintiff clearly meets the second prong of his *prima facie* case, as it is undisputed that he

was terminated from his employment at 3Circle.

The first and third prongs are less clear, as Plaintiff did not report the alleged sexual harassment to 3Circle, but rather wrote an anonymous letter insinuating that Stanley should be investigated without stating anywhere in the letter that he was an employee that was being sexually harassed by Stanley.  Further, Plaintiff stated multiple times in his deposition that he intentionally included misleading information in the anonymous letter, such as that it was from a group of 3Circle members, because he did not want 3Circle to know that he was the author of the letter. *See* Doc. 68-4 at 2-3; Doc. 68-5.

Complaining of an unlawful employment practice is a protected activity.  However, "[n]ot every act by an employee in opposition to . . . discrimination . . . is protected.  The opposition must be directed at an unlawful employment practice of an employer, not an act of discrimination by a private individual."  *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 959 (11th Cir. 1997) (citing *Silver v. KCA, Inc.*, 586 F.2d 138, 141 (9th Cir. 1978).  To be clear, "the specific evil at which Title VII was directed . . . [is] the eradication of discrimination **by employers against employees**."  *Silver*, 586 F.2d at 141 (emphasis added).

Here, the anonymous letters sent by Plaintiff to 3Circle did not complain of an unlawful employment practice.  Rather, the letters purported to be from a group of 3Circle members, **not employees**, complaining about the operation of the church with no mention of **employment practices**.  Thus, Plaintiff fails to meet the first prong to establish a *prima facie* case of retaliation.

As to the third prong, "a plaintiff needs to show . . . that the decisionmaker actually knew about the employee's protected expression."  *Martin v. Fin. Asset Mgmt. Sys., Inc.*, 959 F.3d 1048, 1053 (11th Cir. 2020).  "[A] . . . finding that a decisionmaker was aware of an employee's protected conduct 'must be supported by reasonable inferences from the evidence, not mere speculation.'"

*Id.* (quoting *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1355 (11th Cir. 1999)).  A plaintiff can demonstrate causation, however, "by showing close temporal proximity between the statutorily protected activity and the adverse employment action."  *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007).  But, "'unrebutted evidence that the decision maker did not have knowledge' of the employee's protected conduct means that 'temporal proximity alone is insufficient to create a genuine issue of fact as to causal connection.'"  *Martin*, 959 F.3d at 1054 (citing *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000)).

Here, Plaintiff does not produce anything beyond mere speculation that 3Circle was aware of his alleged protected activity.  Defendant claims it did not know Plaintiff wrote the anonymous letters until he filed his EEOC complaint *after* he was terminated.  Plaintiff states it is his belief that the 3Circle leaders read the second letter, realized Plaintiff wrote both the first and second letters, and then fired him.  Doc. 53-1 at 28-29.  Plaintiff's only reaches this conclusion because during the meeting Stanley told Plaintiff that they knew he'd been unhappy, and Plaintiff "never told anyone that [he] was unhappy with anyone or anything at the church expect in the two letters which were anonymous."  Doc. 68-3 at 3.  However, Plaintiff did not need to explicitly tell anyone at 3Circle that he was unhappy.  The 3Circle leaders could have inferred from their interactions with Plaintiff and his job performance that he was unhappy there.  Plaintiff's belief that the reason Stanley told Plaintiff they knew he was unhappy at 3Circle was because they knew he wrote the anonymous letters is mere speculation, at best.  Speculation based solely upon his supposition, belief, and opinion and not actual evidence (whether circumstantial or otherwise) which makes defendant's evidence unrebutted.  Therefore, Plaintiff has failed to show a causal link between his alleged protected activity and his termination and cannot meet the third prong to establish a *prima facie* case of retaliation.

Plaintiff fails to meet the first and third prongs to establish a *prima facie* case of retaliation under Title VII, thus his retaliation claim fails. However, for purposes of summary judgment, the Court the Court will continue its analysis as if Plaintiff was able to establish a *prima facie* case of retaliation.

### (b) Legitimate, Non-Retaliatory Reasons for Termination

Even assuming Plaintiff was able to establish a *prima facie* case of retaliation, 3Circle has articulated a legitimate, non-retaliatory reason for terminating him. Namely, that Plaintiff was terminated because of performance issues and his failure to keep up with his work obligations. 3Circle lists numerous instances of Cole's failure to perform his job, including failing to clear several boxes in an area where a retention pond was to be constructed, failure to finish a pathway he began working on, failure to properly touch up paint and reset chairs after an event, failure to come to the church to resolve an HVAC issue, failure to secure bookshelves to a wall, failure to hang fire extinguishers, and sleeping on the job. *See* Doc. 61 at 6-8.

### (c) Pretext

Because 3Circle has articulated a legitimate, non-retaliatory reason for terminating Plaintiff, the burden shifts to Plaintiff to prove by a preponderance of the evidence that the reason purported by 3Circle is pretext. "The plaintiff must meet the reason preferred head on and rebut it. If the employer proffers more than one legitimate, nondiscriminatory reason, the plaintiff must rebut each of the reasons to survive a motion for summary judgment. *Crawford v. City of Fairburn*, 482 F.3d 1305, 1308 (11th Cir. 2007) (citations omitted).

Plaintiff argues that 3Circle's proffered reason for terminating him is pretext because Stanley never discussed Plaintiff's multiple alleged performance failures despite several opportunities to do so and instead told Plaintiff that he was being terminated because they knew

he had "been unhappy with some things around here and some people" and they were "moving in a different direction," and because "the church maintained an employee handbook which required a far different course than that taken by the church when it comes to poor performance." Doc. 68-3 at 3, Doc. 67 at 8. Plaintiff states that in this case, the appropriate discipline would have been for 3Circle to encourage better job performance. However, by Plaintiff's own admission that employee handbook provides: "Employees who fail to maintain a satisfactory level of performance are subject to discipline, up to and including immediate termination." Doc. 67 at 8. Thus, according to its handbook, 3Circle could have terminated Plaintiff at any time for failure to maintain a satisfactory level of performance, and 3Circle therefore did not terminate Plaintiff for poor performance in contravention with the employee handbook. Additionally, by Plaintiff's own admission, one of the reasons that Stanley stated for his termination at the time Plaintiff was terminated was sleeping on the job. Doc. 68 at 8. Plaintiff does not offer any evidence rebutting the numerous named performance failures, but rather states that he was never previously informed of his performance failures. This is not enough. Plaintiff has therefore failed to meet 3Circle's numerous proffered reasons for termination head on and rebut them.

Accordingly, even if Plaintiff established a *prima facie* case of retaliation, which this Court finds he did not, his claim also fails at the pretext stage of analysis. Consequently, Defendant 3Circle's motion for summary judgment is due to be **GRANTED** as to Plaintiff's Title VII retaliation claim.

**D.     Defendant Stanley's Motion for Summary Judgment**

Defendant Stanley moves for summary judgment as to Plaintiff's assault and battery claims against him. Doc. 37. Additionally, Stanley moves for an award of fees and costs against Plaintiff under the Alabama Litigation Accountability Act. *Id.*

This Court has discretion to either continue to exercise supplemental jurisdiction of the remaining state law claims, or to remand them back to the state court.  *See Baggett v. First Nat'l. Bank of Gainesville*, 117 F.3d 1342, 1352 (11th Cir. 1997).

> Although the district court has discretion, concerns of federalism—namely, of federal courts of limited jurisdiction weighing in on state law—counsel in favor of dismissing state-law claims after the federal claims are dismissed. 'We have encouraged district courts to dismiss any remaining state claims when . . . the federal claims has been dismissed prior to trial.' *Raney v. Allstate Ins. Co.*, 379 F.3d 1086, 1089 (11th Cir. 2004).  The Supreme Court has also put a thumb on the scale: '[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise [pendant] jurisdiction . . ..' *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988).  A district court, exercising its already broad discretion, will rarely err by declining supplemental jurisdiction after the federal claims that supported its jurisdiction are dismissed.

*Silas v. Sheriff of Broward Cnty.*, 55 F.4th 863, 866 (11th Cir. 2022).

The Court has dismissed all federal claims in this lawsuit, and only Plaintiff's state law claims against Stanley remain.  Accordingly, the Court declines to exercise supplemental jurisdiction over the remaining state law claims, and the remaining claims will be remanded back to the Circuit Court for Baldwin County, Alabama for resolution.

## IV.   CONCLUSION

For the reasons given in this opinion it is **ORDERED** as follows:

(1)   Defendants' Motion to Strike (Doc. 77) is **CONSTRUED** as an objection and is **OVERRULED** and Plaintiff's motion to accept the evidence as timely filed (Doc. 83) is **GRANTED**.

(2)   Defendant Stanley's Motion for Rule 56(H) Hearing, Reasonable Fees and Expenses (Doc. 81) is **DENIED**.

(3)   Defendant 3Circle's motion for summary judgment (Doc. 61) is **GRANTED**, and Plaintiff's claims against Defendant 3Circle are **DISMISSED with prejudice**.

    (4)    The Court declines supplemental jurisdiction over the remaining state law claims which are **REMANDED** back to the Circuit Court for Baldwin County, Alabama. Defendant Stanley's motion for summary judgment (Doc. 37) remains pending for resolution by the state court.  The Clerk of Court is **DIRECTED** to take the appropriate steps to effectuate the remand.

    Final judgment pursuant to Fed. R. Civ. P. 58 will issue separately as to the federal claims.

    **DONE** and **ORDERED** this 26th day of February 2024.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED S TATES DISTRICT JUDGE